IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN BIALKO, JR.             :
          Plaintiff       :
                     :
    v.                    :     3:CV-08-0364
                     :     (JUDGE VANASKIE)
QUAKER OATS, et. al.      :
          Defendant    :

MEMORANDUM

Plaintiff, John Bialko, Jr., suffers from severe anxiety and depression, which forced him to take an extended leave of absence from his position as a Forklift Operator for Defendant SVC Manufacturing, Inc. in August of 2005. Approximately one year later, in July of 2006, he was cleared to return to work with the restriction that he not work over forty (40) hours per week. No additional limitations were placed on his return to work. Because overtime was required of all production workers at the SVC facility, Plaintiff was not allowed to return to work. Based on this refusal, Plaintiff filed this action, asserting claims of disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.[1]

_____

[1]  For the convenience of the reader of this opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. The page numbers referenced in this Memorandum opinion refer to the page number of the electronic CM/ECF record.

Currently pending is Defendants' Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. (Dkts. 58, 61.) Because Plaintiff has failed to produce evidence sufficient to support an inference that his disorders substantially interfered with a major life activity or were regarded as having such an effect, his disability discrimination claims fail. Furthermore, Plaintiff's retaliation claim fails because he did not raise it in the required administrative agency processes. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied and Defendants' Motion for Summary Judgment will be granted.

I.    BACKGROUND

Defendant SVC Manufacturing, Inc. ("SVC") is a wholly-owned subsidiary of Stokely-Van Camp, Inc., which is a wholly owned subsidiary of Defendant Quaker Oats Company, which is a subsidiary of PepsiCo, Inc. (Kramer Aff., Dkt. 62-11, at 2.) SVC operates a facility in Pennsylvania known as the "Mountain Top" facility. (Id.) The Mountain Top facility employs approximately 190 hourly production employees and 45 salaried managerial employees. (Kramer Dep., Dkt. 67-14, at 26.) The Mountain Top facility produces Gatorade. "All hourly production employees at [Mountain Top] are employees of SVC and their employment is governed by a collective bargaining agreement (the "CBA"), under which Local 2905 of the International Association of Machinists & Aerospace Workers represents the hourly production employees." (Kramer Aff., Dkt. 62-11, at 3.)

Under the CBA, the Mountain Top facility "is authorized to operate on a seven-day-per-

week, 24-hours-per-day production schedule whenever SVC determines it is in the best interest of the company," and all "hourly production and warehouse employees must work assigned overtime." (Id.) The Mountain Top facility operates on a "40/64" production schedule when production needs dictate. (Id. at 4.) During this schedule, production and warehouse employees are required to work mandatory overtime. (Kramer Aff., Dkt. 62-11, at 4; Pl. Dep., Dkt. 67-12, at 11; Kramer Dep., Dkt. 67-14, at 17.) When this schedule is in effect, employees work forty hours during the week and 12 hours on each day of the weekend. (Pl. Dep., Dkt. 67-12, at 11.) In addition to the operation of the 40/64 schedule, there are also other times when employees are required to work overtime. (Id. at 22.)

Bialko began working at the Mountain Top facility in 1999 as a Forklift Driver. (Amend. Comp., Dkt. 53, at ¶ 8.) In August of 2002, Dr. Matthew Berger, a psychiatrist, diagnosed Plaintiff as having panic disorder and generalized anxiety disorder. (Psych. Eval., Dkt. 67-7, at 1-2.) A treatment plan was created. (Id.)

On Friday, July 29, 2005, Plaintiff had to leave work by ambulance due to illness. (Hilt E-Mail, Dkt. 62-11, at 19; Pl. Dep., Dkt. 67-12, at 52.) Plaintiff reported that his heart rate was elevated, he felt like he was going to pass out, and could not stand.[2] (Pl. Dep., Dkt. 67-12, at 52.)

On August 19, 2005, Plaintiff filed a Certification of Health Care Provider, pursuant to

---

[2] The medical records surrounding this incident were not provided to the Court.

the Family and Medical Leave Act of 1993. (Certification, Dkt. 62-6, at 28.) The Certification stated that Plaintiff had severe anxiety and panic attacks that occurred without triggers and caused him to be unable to work or function adequately when an attack occurred. (Id.) The Certification indicated that Plaintiff may need "episodic time off [from] work while having severe anxiety or panic attacks," and would need "ongoing medication, monitoring, and psychotherapy." (Id.) On September 2, 2005, SVC approved Plaintiff's FMLA leave request beginning July 30, 2005, with an "unknown" end-date. (Employer Response, Dkt. 62-11, at 22.) The Employer Response form indicated that the requested leave would be counted against Plaintiff's FMLA leave entitlement.[3] (Id.)

SVC provided its workers with short and long term disability benefit plans, which were administered by a third party, VPA, Inc. (Kramer Aff., Dkt. 62-11, at 4.) "It is VPA, Inc.'s practice not to share medical information with [Ms. Kramer] (or anyone else at the [Mountain Top facility]) about employees" who are on short-term or long-term disability leave. (Id. at 5.) SVC receives approval vouchers for disability benefits from VPA, but the vouchers do not identify the disabling condition. (Kramer Dep., Dkt. 67-14, at 29.)

In September 2005, Plaintiff became eligible for short term disability ("STD") benefits. (DSUMF, Dkt. 64, at ¶ 30.) Short term disability benefits are available if an employee of SVC

---

[3] By December, 2005, Plaintiff exhausted his available leave under the FMLA. (Kramer Aff., Dkt. 62-11, at ¶ 12.)

4

has a "non-work related illness or injury that prevents [the employee] from doing the basic duties of [his or her] job." (STD Plan, Dkt. 62-11, at 36.) Based on VPA's practices, Ms. Beverly Kramer of SVC's Human Resource Department did not receive any medical information from VPA while Plaintiff was receiving STD benefits. (Kramer Aff., Dkt. 62-11, at ¶ 14.)

In March 2006, Ms. Kramer notified Plaintiff that "due to the needs of the business," his Forklift Operator position was being posted to be filled by another employee. (Id. at ¶ 13.) The position was filled shortly thereafter. (Id.)

On April 6, 2006, Melissa Jones, a Disability Benefit Specialist II at VPA, Inc., sent Plaintiff a letter advising him that review of his long term disability ("LTD") benefit claim had been completed and that it had been determined that he was "eligible for benefits under the PepsiCo LTD Plan," based upon the finding that he was unable to perform the essential duties of his occupation.[4] (VPA Letter, Dkt. 62-11, at 27.) VPA and Plaintiff spoke regularly regarding Plaintiff's medical condition. (Pl. Dep., Dkt. 67-12, at 17.)

On July 11, 2006, Dr. Berger issued a letter stating that Mr. Bialko was currently under his care for a medical condition and that he was able to return to work, with the only restriction being that he could not work more than forty (40) hours per week. (Berger Letter, Dkt. 62-6, at

---

[4] The LTD Plan provides benefits for 24 months when the employee is "unable to perform all of the material and essential duties of your own occupation." (Dkt. 62-12, at 4.) After 24 months, the employee must show that he is "unable to engage in any reasonable occupation for gainful employment" in order to continue to receive LTD payments. (Id.)

33.)  Plaintiff brought the letter to Ms. Kramer and seemed excited to return to work.  (Kramer Dep., Dkt. 67-14, at 15.)  Ms. Kramer indicated that she would have to talk to management to determine what positions were available since his previous position had been filled several months earlier.  (Pl. Dep., Dkt. 67-12, at 13.)  Ms. Kramer did not ask for any further documentation, or inquire into why Plaintiff could only work 40 hours per week.  Plaintiff did not provide any additional medical information or documentation.  (DSUMF, Dkt. 64, at ¶ 41.)

On July 24, 2006, Ms. Kramer sent a letter to Plaintiff stating that he would not be allowed to return to work with his 40-hour work week restriction.  (DSUMF, Dkt. 64, at ¶ 57.)  On August 7, 2006, Ms. Kramer spoke with Plaintiff's wife, Laurie Bialko, and discussed Plaintiff's situation.  (Id. at ¶ 18.)  Ms. Kramer stated that she explained to Mrs. Bialko that there were "no warehouse or production positions that were within Plaintiff's 40-hour restriction."  (Id.)  Ms. Kramer looked into whether Plaintiff was eligible for FMLA time to cover mandatory overtime, but determined that Plaintiff's 12 weeks of FMLA had expired and he "wasn't eligible under FMLA for new FMLA." (Kramer Dep., Dkt. 67-14, at 40.)  After speaking with Mrs. Bialko, Ms. Kramer sent Plaintiff a letter with an enclosed Return to Work form that needed to be completed by Plaintiff's doctor.  (Kramer Aff., Dkt. 62-11, at 5.)

On August 23, 2006, Mrs. Bialko sent an e-mail to Ms. Kramer's boss, Deon Riley, the Director of Human Resources of Quaker Oats Company, headquartered in Chicago.  (DSUMF, Dkt. 64, at ¶ 61.)  The letter stated that Plaintiff suffered from severe depression/anxiety, and

that a doctor had issued a note allowing him to return to work with a forty (40) hour work week restriction, but that Plaintiff had not been allowed to return to work. (Id.)

On August 24, 2006, Plaintiff's union filed a grievance, which stated that it "disagrees with the company for not bringing John Bialko back to work. John wants to come back with a 40 hr work restriction, which the company is currently allowing other employees to do.'" (DSUMF, Dkt. 64, at ¶ 62.) On September 6, 2006, Ms. Kramer denied the grievance. (Id. at ¶ 63.) The Union refused to accept the denial of the grievance and requested that the grievance be taken to the next step. (Id. at ¶ 64.)

On November 21, 2006, without the assistance of counsel, Plaintiff completed, reviewed, and signed Pennsylvania Human Relations Commission intake form IN-17 -Non-Job Related Disability Questionnaire. (Questionnaire, Dkt. 62-7.) Plaintiff indicated that he was discriminated against based on a "non-job related disability" of "depression/anxiety" that affected his job in that he "can only perform 40 hrs work week[s]," because he "mentally cannot handle [the] stress of 60 hr work weeks." (Id. at 4.) On December 5, 2006, Plaintiff signed a PHRC Complaint that had been prepared by the PHRC. (Complaint, Dkt. 62-7, at 15.) Plaintiff's PHRC Complaint of Discrimination states:

> 'I have a mental impairment of Depression/Anxiety Disorder. . . . Because of my limited toleration of stress I am not able to work more than 40 hours per week. . . I can perform the essential functions of my job with the reasonable accommodation of not working more than 40 hours per week. . . . By a letter dated July 24, 2006, the Respondent informed me that they would not accommodate me with a 40 hour work week.'

7

(Id. at 16-17.)

On February 7, 2007, Plaintiff's counsel sent a letter to Defendants demanding that Plaintiff be returned to work with a forty (40) hour work week restriction. (Dkt. 62-7, at 20.) In February 2007, Ms. Kramer became aware that Plaintiff had filed a claim with the PHRC. (Kramer Dep., Dkt. 67-14, at 29.) In late February, Ms. Kramer informed Plaintiff that he could return to work in a position that would not require overtime. (DSUMF, Dkt. 64, at ¶ 71.)

On March 2, 2007, Dr. Berger completed a "Medical Treatment/Return to Work Questionnaire" for Plaintiff which identified Plaintiff's diagnosis as "panic disorder" and released Plaintiff "to return to work for 8 hour days for a total of 40 hours a week." (Return to Work, Dkt. 62-11, at 20-21.) Plaintiff returned to work on March 5, 2007. (DSUMF, Dkt. 64, at ¶ 73.) On March 6, 2007, the Union grievance filed on behalf of Plaintiff was treated as resolved. (Grievance, Dkt. 62-6, at 45.)

Plaintiff is currently employed at the Mountain Top facility with a 40-hour-per-week restriction. (Kramer Aff., Dkt. 62-11, at 5.) Between March 5, 2007 and February 5, 2009 Plaintiff missed approximately 20 days of work, total, because of his anxiety. (Pl. Dep., Dkt. 67-12, at 14.)

Plaintiff brought this action on February 26, 2008, alleging a violation of the ADA and the PHRA for disability discrimination, failure to accommodate, and retaliation. Discovery in this matter closed on March 30, 2009. (Dkt. 16.) On May 22, 2009, Plaintiff was permitted leave to

file an amended complaint in this matter. (Dkt. 50.) An amended complaint was filed on May 28, 2009. (Dkt. 53.) On June 22, 2009, Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 58), and Defendants filed a Motion for Summary Judgment. (Dkt. 61.) The motions have been fully briefed and are ripe for review.

II.     DISCUSSION

    A.     Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White

v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988), abrogated on other grounds, Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). Once the moving party satisfies its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party" bears the burden of proof at trial. Celotex, 477 U.S. at 322.

B.     Proper Defendants

It is Defendants' position that SVC is the legal entity that employs Plaintiff and all other employees at the Mountain Top, Pennsylvania facility.[5] (Def. Mt. S.J., Dkt. 63, at 9.) Defendants assert that the Quaker Oats Company ("Quaker") did not make the decision to not return Plaintiff to work, and has no liability in this matter. In support of their argument, Defendants point out that Plaintiff's paychecks came from SVC, his Form W-2 identifies his employer as SVC, and the cover page of the CBA identifies Quaker, not as the employer, but

---

[5] "SVC is a wholly owned subsidiary of Stokely-Van Camp Inc., which is a wholly owned subsidiary of Defendant the Quaker Oats Company, which is a subsidiary of PepsiCo, Inc." (Kramer Aff., Dkt. 62-11, at 2.)

as parent company. Accordingly, Defendants aver that Quaker is not a proper defendant because Plaintiff was not an employee of Quaker and Quaker did not take any adverse employment actions against him. (Id. at 10.)

Plaintiff asserts that there is at least an issue of fact as to whether Quaker is a proper party, noting that he received a service plaque from Quaker, he wears a shirt that says Quaker, and the sign outside the Mountain Top facility says Quaker. (L. Bialko Dep., Dkt. 67-13, at 6.) Additionally, Plaintiff's wife used a Quaker email address to voice her concerns about the refusal to reinstate her husband. (E-Mail, Dkt. 62-8, at 19.) Plaintiff relies upon the "integrated enterprise" theory in arguing that Quaker is subject to liability.

"The 'integrated enterprise' test was developed by courts to help resolve cases in which a plaintiff attempts to hold two corporations liable as a single employer for violations of a statute prohibiting discrimination in employment." Nunez, MD v. Temple Prof'l Assocs., No. Civ. A. 03cv6226, 2005 WL 435238, at *3 (E.D. Pa. Feb. 22, 2005). "Under this test, a court considers the following characteristics of the parent and subsidiary corporation: (1) the interrelation of operations, (2) common management, (3) common control of labor relations, and (4) common ownership or financial control." Id. Of these characteristics, no single factor is controlling. Id. "There is an initial presumption that 'a parent corporation generally is not liable for the wrongful acts of its subsidiaries simply because the parent wholly owns the subsidiary.'" McGehean v. AF&L Ins. Co., No. Civ. A. 09cv1792, 2009 WL 3172763, at *3 (E.D. Pa. Oct. 2, 2009). In the

Title VII context, a "parent and subsidiary [are] a single employer when the parent has directed the subsidiary to perform the allegedly discriminatory act in question," thus disregarding the separate corporate existence of the subsidiary. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 86 (3d Cir. 2003).

Plaintiff provides no evidence that Quaker directed SVC's actions with regard to his employment, nor has he provided any additional evidence to support a conclusion that the two companies were an "integrated enterprise." There is no evidence of interrelated operations, common management, common control of labor relations, or common financial control. All that Plaintiff has tendered is that SVC is a subsidiary of Quaker and the name Quaker is displayed at his place of employment. This evidence is insufficient to support an inference that Quaker was responsible for the decision to prevent Plaintiff from returning to work at the Mountain Top facility from July of 2006 to March of 2007. Moreover, the Kramer Affidavit establishes that SVC was Plaintiff's employer and made the decisions at issue in this case. Accordingly, Defendant Quaker is entitled to summary judgment on all claims against it.

C.    Arbitration

Defendants seek summary judgment, in part, based on the mandatory arbitration provision in the CBA. (Mt. S.J., Dkt. 63, at 32.) In opposition to arbitration, Plaintiff argues that Defendants waived their "right to transfer the suit to arbitration at this point in the litigation." (Opp. Mt. S.J., Dkt. 67, at 28.)

"[W]aiver of arbitration rights 'is not to be lightly inferred' by federal courts." Palcko v. Airborne Express, Inc., 372 F.3d 588, 589 (3d Cir. 2004) (quoting PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995)). "[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived." Id. (quoting Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992)); Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 231 (3d Cir. 2008). "'[W]aiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide.'" Zimmer, 523 F.3d at 231 (quoting Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007)).

> [T]he 'nonexclusive list of factors relevant to the prejudice inquiry' includes the timeliness of the motion to compel arbitration, the degree to which the merits of the nonmovant's claims have been contested by the party moving for arbitration, whether the non-movant is otherwise aware of the movant's intention to seek arbitration, the extent of non-merits motion practice that has transpired, the movant's assent to the trial court's pretrial orders, and the degree to which the parties have engaged in discovery.

Id. (citing Ehleiter, 482 F.3d at 222). "'[W]aiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery,'" although, "'the length of time period involved alone is not determinative.'" Id. (citations omitted).

Defendants' Answer to the original complaint and their Answer to the Amended Complaint both included the defense that Plaintiff had agreed to submit his claims to final and binding arbitration. (Dkt. 10, at 7; Dkt. 56, at 7.) Unopposed motions for extensions of time

13

have been filed (Dkt. 3, 15, 43), several discovery conferences have been held (Dkt. 17, 24, 27, 28, 33), the parties attended mediation (Dkt. 36), and additional motions have been filed (Dkt. 34, 37), all without Defendants moving to compel arbitration. It would be highly prejudicial to Plaintiff for this case to be sent to arbitration after the extensive litigation that has already occurred. Plaintiff has devoted substantial time, effort, and money into prosecuting this action. Under these circumstances, Defendants waived any right to arbitration by actively litigating this case for a year and a half prior to filing the motion for summary judgment. See Hoxworth, 980 F.2d at 925 (concluding that the defendants waived their right to arbitration by actively litigating the case for a year prior to filing the motion to compel arbitration). Accordingly, Defendants' Motion for Summary Judgment premised on the arbitration provision of the CBA is denied.

D.    ADA/PHRA Disability Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . in regard to the job application procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). The analytical framework of a disability discrimination action under the PHRA is essentially identical to that of a claim under the ADA. See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998). Accordingly, the analysis of Plaintiff's ADA claim is equally applicable to his claim of disability discrimination under the PHRA.

Successful discrimination claims can be established in two ways: by direct evidence that the employer's decision was motivated by discrimination; or by indirect evidence which creates an inference of discrimination under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). There is no direct evidence of discrimination in the case sub judice. Accordingly, the familiar burden-shifting framework must be used.

Under the burden-shifting framework, the plaintiff must first present sufficient evidence to establish a prima facie case of discrimination. A plaintiff establishes a prima facie case of discrimination by showing that: (1) he was a member of a protected class (i.e., was disabled under the ADA); (2) he was qualified for the position in question, with or without accommodation; and (3) he suffered an adverse employment decision, such as discharge, as a result of the discrimination. See Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000); Taylor, 184 F.3d at 306.

If a plaintiff presents a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the employer to produce some legitimate non-discriminatory reason for the adverse employment action. Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Once the employer has met this burden of production, it is incumbent upon the plaintiff to show that the articulated reason for the adverse action is not worthy of belief and that the action was motivated by a discriminatory animus. Id.; Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

1.    *Member of a Protected Class*

Defendants assert that Plaintiff's mental health issues did not substantially limit his ability to perform any major life activity. Plaintiff contends that he was disabled within the meaning of the ADA and PHRA because his depression and anxiety limited the major life activities of working, thinking, concentrating, and socializing. (Opp. Mt. S.J., Dkt. 67, at 6-9.)

Defendants do not deny that Plaintiff was diagnosed as depressed and having a panic and generalized anxiety disorder in 2002. Merely being diagnosed with depression and panic disorder, however, does not make one disabled for purposes of the ADA. See George v. Pennsylvania Dept. of Corrections, No. 3:CV-09-1202, 2010 WL 936778, at *8 (M.D. Pa. Mar. 11, 2010). Instead, the plaintiff must show that the he has an impairment that falls within the statutory definition of disability. See Smith v. Grattan Family Enters., LLC, No. 08cv14314, 2009 WL 3627953 (E.D. Mich. Oct. 30, 2009) (citing Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002)) ("The diagnosis of an impairment alone is not enough to establish disability under the ADA, as a plaintiff must prove that the impairment substantially limits his individual abilities in one or more major life activities.").

The statute defines "disability" defined as "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). For a person to be substantially limited in a major life activity:

'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily life. The impairment must also be permanent or long-term.'

George, 2010 WL 936778, at *8 (quoting Toyota Motor Mfg., 534 U.S. at 198).

"A temporary, transient, or nonpermanent impairment is not a disability that substantially limits a major life activity." Seibert v. Lutron Electronics, No. 08-5139, 2009 WL 4281474, at *5 (E.D. Pa. Nov. 30, 2009). The ADA requires that those claiming the ADA's protection "prove a disability by offering evidence that the extent of the limitation caused by the impairment in terms of their own experience . . . is substantial."[6] Toyota Motor Mfg., 534 U.S. at 198.

---

[6] "On September 25, 2008, President George W. Bush signed the ADA Amendments Act of 2008 into law." Walstrom v. City of Altoona, No.3:2006-81, 2008 WL 5411091, *5 n.3 (W.D. Pa. Dec. 29, 2008) (citing Pub. L. No. 110-325; 122 Stat. 3553 (2008)). The legislation took effect on January 1, 2009, and amended the ADA's definition of "qualified individual with a disability" to extend the ADA's protection to a broader class of individuals. "[B]ecause there is nothing in the statutory language that suggests [the Amendments] should apply retroactively, the pre-Amendments standards apply." Amorosi v. Molino, No. Civ. A. 06-5524, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar. 19, 2009). Furthermore, it appears that every court that has addressed the issue has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date. See, e.g., Kiesewetter v. Caterpillar, Inc., No. 08-2140, 2008 WL 4523595, at *1 (7th Cir. Oct. 9, 2008); Walstrom v. City of Altoona, No. 3:2006-81, 2008 WL 5411091, at *5 (W.D. Pa. Dec. 29, 2008); Hays v. Clark Prods., Inc., No. 1:07cv328, 2008 WL 5384300, at *6 (S.D. Ind. Dec. 18, 2008); Levy ex rel Levy v. Hustedt Chevrolet, No. 05-4832, 2008 WL 5273927, at *3 n.2 (E.D.N.Y. Dec. 17, 2008); Gibbon v. City of New York, No. 07-civ-6698, 2008 WL 5068966, at *5 n.57 (S.D.N.Y. Nov. 25, 2008). As explained in Knox v. City of Monroe, No. 07-606, 2008 WL 5157913, at *5 n.10 (W.D. La. Dec. 9, 2008), "the amendments to the ADA are not effective until January [1], 2009, and the Court must use the laws and interpretations of those laws in effect at the time of the complained-of-actions." I previously reached this conclusion, see Supinski v. United Parcel Service, Inc., No. 3:CV-06-793, 2009 WL 113796 (M.D. Pa. Jan. 16, 2009), and the case law handed down since Supinski only reinforces my conclusion. Accordingly, the 2008 Amendments are not applicable

17

"The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630(j)(3)(I).  "To determine whether plaintiff is substantially limited, courts should consider the following factors: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Namako v. Acme Mkts., Inc., No. 08-3255, 2010 WL 891144, at *4 (E.D. Pa. Mar. 11, 2010) (quoting Emory v. AstraZeneca Pharms. LP, 401 F.3d 174, 179-80 (3d Cir. 2005)).

"A disability determination is an individualized inquiry to be decided on a case-by-case basis." Blake v. UPMC Passavant Hosp., No. 06-193, 2008 WL 936917, at *4 (W.D. Pa. Apr. 4, 2008) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)).  "[T]he threshold to be considered disabled under the ADA is a high standard." Parker v. Verizon PA, Inc., No. 07cv435, 2007 WL 4248277, at *8 (W.D. Pa. Nov. 30, 2007).

The court must first identify the specific life activity or life activities that Plaintiff's anxiety and depression affects and then evaluate whether his condition "substantially limits" those life activities. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 307 (3d Cir. 1999).  Plaintiff has

---

in Plaintiff's case, as his cause of action arose before January 1, 2009.  See id.

specifically alleged that four major life activities are affected by his anxiety and depression: 1) his ability to work; 2) his ability to think; 3) his ability to concentrate; and 4) his ability to interact socially.  (Opp. Mt. S.J., Dkt. 67.)

        a.      Work

Plaintiff's first claim is that his depression and anxiety limited his ability to work, thus substantially limiting a major life activity. (Opp. Mt. S.J., Dkt. 67, at 8.) In this regard, Plaintiff acknowledges that he can work 40 hours per week.  He claims that his condition substantially limits his ability to work more than a normal workweek.

"[A]n inability to work overtime is not a substantial limitation on the ability to work." Cotter v. Ajilon Servs. Inc., 287 F.3d 593, 598 (6th Cir. 2002) (citing Linser v. Ohio Dept. of Mental Health, No. 99-3887, 2000 WL 1529809, at *2 (6th Cir. Oct. 6, 2000) (inability to work more than forty hours per week is not a substantial limitation on the ability to work)); Vonderheide v. United States Post Office, No. 97-5508, 1998 WL 432478, at *2 (6th Cir. July 16, 1998) (same); Rutlin v. Prime Succession, Inc., 75 F. Supp. 2d 735, 738 (W.D. Mich.1999) (same); Muthler v. Ann Arbor Mach., Inc., 18 F. Supp. 2d 722, 728-29 (E.D. Mich.1998) (same); see also Doren v. Battle Creek Health Sys., 187 F.3d 595, 599 (6th Cir.1999); Smith v. Burlington County of New Jersey, No. 02-5581, 2004 WL 1932850, at *3 (D.N.J. July 27, 2004) ("'an inability to work overtime is not a substantial limitation on the ability to work' permitting a plaintiff to claim a disability under the ADA").  "[A]nyone who can work 40 hours a week as a

limitation of their abilities is not suffering a substantial impairment of a major life activity, namely the ability to work." Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 343 (E.D. Pa. 1994). "[A] plaintiff is not disabled under the ADA where the plaintiff's impairment requires him to limit the hours he works, but does not prevent him from working at jobs that do not require overtime. . . . '[T]here are vast employment opportunities available which require only 40-hour work weeks.'" Smith, 2004 WL 1932850, at *3. "[A] restriction on overtime alone 'does not demonstrate that the Plaintiff was substantially limited in any major life activity." Namako, 2010 WL 891144, at *5 (citation omitted). Accordingly, as a forty-hour work week restriction is not a substantial limitation on the major life activity of working, Plaintiff is not disabled as defined by the ADA as a result of his overtime restriction. See Smith, 2004 WL 1932850, at *3; Namako, 2010 WL 891144, at *5; Brennan, 850 F. Supp. at 343.

    b.  Thinking and Concentrating

    Plaintiff also contends that the major life activity of thinking and concentrating is limited when he has panic or anxiety attacks. (Opp. Mt. S.J., Dkt. 67, at 10.) "[T]hinking is a major life activity." Taylor, 184 F.3d at 307. Concentrating is also a major life activity. Parker v. City of Williamsport, 406 F. Supp. 2d 534, 546 (M.D. Pa. Dec. 21, 2005); see also Sterling, 2006 WL 2792203, at *4. Plaintiff does not have "to show an utter inability to think in order to survive a summary judgment motion, but [Plaintiff] still must adduce sufficient evidence such that a reasonable jury could find that he is substantially impaired in the major life activity of thinking."

Parker, 406 F. Supp. 2d at 546 (citation omitted).

Plaintiff's Medical Treatment/Return to Work Questionnaire did not include any indication that Plaintiff's thinking or concentration was impaired. (Dkt. 62-11, at 20.) Dr. Berger's July 11, 2006 letter indicated that Plaintiff "may not work more than 40 hours per week," but did not indicate that Plaintiff's thinking or concentrating functions were at all limited. (July 11, 2006 letter, Dkt. 62-6, at 33.) In Plaintiff's PHRC Disability Questionnaire, when asked to "[d]escribe in general what major life activities (such as walking or lifting) are affected by your disability and describe the extent to which that activity is affected," Plaintiff wrote, "suffer from depression/anxiety," but did not mention thinking or concentrating (PHRC Disability Questionnaire, Dkt. 62-7, at 3.) When asked to describe his job and the effect his disability has, Plaintiff wrote: "Forklift driver- Can only perform 40 hrs work weeks. Mentally cannot handle stress of 60 hr work weeks," Plaintiff did not mention that his ability to think or concentrate was affected. (Id. at 4.) When asked whether he had any restrictions on mental activities, Plaintiff responded, "Yes, 40 hour work week. Due to stress/anxiety/depression." (Id. at 7.) Again, Plaintiff did not mention issues with thinking or concentrating. In Plaintiff's PHRC Complaint he indicated he had the mental impairment of "Depression/Anxiety Disorder" and that because of his limited tolerance of stress he was unable to work more than forty (40) hours per week. (PHRC Comp., Dkt. 62-7, at 16.) Plaintiff stated: "I can perform the essential functions of my job with the reasonable accommodation of not working more than 40 hours per week."

(Id.)  Again, there was no mention of thinking or concentrating.

Four years earlier, in Plaintiff's 2002 Initial Psychiatric Evaluation, Plaintiff indicated he was "not focused and has decreased concentration." (Dkt. 67-7, at 1.) The August 4, 2005 Certification of Health Care Provider for FMLA leave states: "Patient has severe anxiety and panic attacks that occur without triggers. Patient is unable to work/function adequately when this occurs." (2005 Certification, Dkt. 62-6, at 28.) There are no medical records indicating Plaintiff's ability to think or concentrate was affected in 2006.

When asked whether his "ability to concentrate or think has ever been limited at work since [his return] to work in March of 2007," Plaintiff responded, "It's happened a couple times where I had left work because of it." (Pl. Dep., Dkt. 67-12, at 67.) Plaintiff also indicated that he had not communicated to anyone in management about a limitation to think or concentrate, and that other than during panic attacks, he was able to concentrate and think acceptably. (Id.)

Between March 5, 2007, and February 5, 2009, Plaintiff indicated he had missed a total of approximately twenty (20) days of work as a result of his anxiety. (Pl. Dep., Dkt. 67-12, at 14.) Accordingly, this would mean that Plaintiff was able to work, without a debilitating panic or anxiety attack, approximately ninety-six (96) percent of the time.[7] On approximately 96 percent

---

[7] There are 100 weeks between March 5, 2007, and February 5, 2009. Without taking holidays or vacation days into account, Plaintiff would have had 500 workable days, working five days a week for 100 weeks. Missing twenty (20) days only accounts for four (4) percent of his working days.

of his workable days, since his return to work, Plaintiff was able to concentrate and think acceptably.

The less than five percent of the time that Plaintiff's thinking and concentration is impaired does not constitute a substantial limitation. While his anxiety attacks may restrict his ability to think and concentrate, the frequency of these episodes appears to be limited. See Sterling, 2006 WL 2792203, at *4. Furthermore, Plaintiff has not pointed to any report from his psychiatrist that opines that Plaintiff is substantially limited in the ability to think or concentrate. Consequently, the extent of Plaintiff's limitation in thinking and concentrating is not substantial as it does not significantly restrict the time the Plaintiff can think and concentrate clearly. See Seibert, 2009 WL 4281474, at *5.

Accordingly, Plaintiff is not disabled as defined by the ADA as a result of his episodic inability to think and concentrate. Furthermore, his averment that he is substantially limited in his ability to work any class of jobs when he has an anxiety or panic attack also does not constitute a disability. (Opp. Mt. S.J., Dkt. 67, at 8.) Plaintiff has been able to work approximately 96 percent of the time since he was returned to work, which would clearly reveal that his ability to work his job, or any class of jobs, was not significantly restricted or substantially limited.

c.    Socializing

Plaintiff also contends that the major life activity of socializing is affected by his anxiety

and panic attacks. While Plaintiff did not specifically make reference to this limitation during his deposition, Plaintiff's wife testified that he has trouble in social situations and she has to force him to go to the shopping mall. (L. Bialko Dep., Dkt. 67-13, at 14.)

Third Circuit courts have held that the ability to socialize and interact with others is a major life activity. McAndrew v. Mercy Health Partners, No.3:cv01-317, 2003 WL 23573863, at *6 (M.D. Pa. Dec. 3, 2003); Sherback v. Wright Auto. Group, 987 F. Supp. 433, 438 (W.D. Pa. 1997); Garvey v. Jefferson Smurfit Corp., No. Civ. A. 00-1527, 2000 WL 1586077, at *3 (E.D. Pa. Oct. 24, 2000). Other than Mrs. Bialko's mention of Plaintiff's difficulties in social situations, Plaintiff has pointed to no additional evidence in the record to support this impairment. The medical record does not indicate such impairment, and he did not mention such impairment during his deposition.

At her deposition, Mrs. Bialko indicated that Plaintiff "has a very hard time in social events. I mean, he's somewhat limited. He would not go anywhere by himself. He would not go out to the mall shopping by himself. But he would go if I forced him . . . ." (L. Bialko Dep., Dkt. 67-13, at 14.) Furthermore, Mrs. Bialko noted Plaintiff does not "choose to get in a crowd of 20, 30 people. He doesn't choose to socialize." (Id. at 15.) This testimony does not show a substantial limitation in a major life activity.

Moreover, when Plaintiff was directly asked whether he had any physical or mental impairments on July 11, 2006, he responded, "at that time, no." (Pl. Dep., Dkt. 67-12, at 12-

13.)  When asked if he had any impairments of major life activities or daily activities he responded, "Impairment? No.  I was – I was feeling good and I was – I was ready to go." (Id. at 13.)  Furthermore, when asked if there were any restrictions on his work or ordinary life activities, other than the 40-hour work limitation, Plaintiff responded that there were no additional restrictions.  (Id.)

Based on the above-stated facts, Plaintiff has failed to present competent evidence of a substantial limitation on his ability to socialize.  Plaintiff has been able to attend work approximately 96 percent of the time, can communicate with friends, co-workers, and family, (Pl. Dep. Dkt. 67-12, at 48, 50, 51), and does not report a limitation on his ability to interact with others.  Any limitation on his ability to socialize is not substantial and does not result in Plaintiff being disabled as defined by the ADA or PHRA.

2.    Regarded as Disabled

Plaintiff contends that even if this Court finds that he was not disabled, Defendants regarded him as disabled.  (Opp. Mt. S.J., Dkt. 67, at 9.)  Even though Plaintiff does not have a disability as defined by the ADA, the ADA may still apply if he can prove that Defendants perceived his impairment as substantial limiting his ability to perform a major life activity.  See Endres v. Techneglas, Inc., 139 F. Supp. 2d 624, 636 (M.D. Pa. 2001).

"For an individual to be 'disabled' under the 'regarded as' portion of the ADA's definition of disability, the individual must demonstrate either that: (1) despite having no impairment at all,

the employer erroneously believes that the plaintiff has an impairment that substantially limits major life activities; or (2) the plaintiff has a nonlimiting impairment that the employer mistakenly believes limits major life activities." Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001). The analysis under the "regarded as disabled" standard focuses not on the plaintiff's actual abilities, "'but rather on the reactions and perceptions of the persons interacting or working with him.'" Robinson v. Lockheed Martin Corp., 212 F. App'x 121, 125 (3d Cir. 2007) (quoting Kelly, 94 F.3d at 109). "The mere fact that an employer is aware of an employee's impairment is insufficient to establish that the employee was regarded as disabled or that such perception caused the adverse employment action." Endres, 139 F. Supp. 2d at 636. "In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA.'" Boyce v. Commonwealth of Pennsylvania, No. 02:04cv110, 2006 WL 3386626, at *8 (W.D. Pa. Nov. 22, 2006).

Plaintiff argues that his receipt of STD and LTD benefits is evidence that SVC regarded him as disabled. Plaintiff, however, offers no citation of authority to support his assertion.

Courts that have addressed contentions similar to that advanced by Plaintiff here have found that the receipt of employer-provided disability benefits does not raise an inference that the employer perceived the employee to have an impairment that substantially limited the ability to perform a major life activity. See, e.g., Lee v. City of Columbus, No. 2:07cv1230, 2009 WL 2929439, at *10 (S.D. Ohio Aug. 31, 2009); Wisbey v. City of Lincoln, No. 4:08cv3093, 2009

26

WL 974945, at *10 (D. Neb. Apr. 10, 2009); Duncan v. Harvey, 479 F. Supp. 2d 125, 130 (D.

D.C. 2007); Bennett v. Calabrian Chems. Corp., 324 F. Supp. 2d 815, 833-35 (E.D. Tex. 2004);

Hoskins v. Oakland County Sheriff's Dept., 44 F. Supp. 2d 882, 891 (E.D. Mich. 1999).  As

stated in Lee, 2009 WL 2929439, at *10, "[t]hat an employer believes that an employee may

qualify for disability benefits under a standard that is narrower than the . . . Act's definition of

'disability' is not evidence that the employee is 'regarded as disabled' under the Act."  The

courts have contrasted the statutory definition of disability with the benefit plan criteria for an

award of STD or LTD benefits in finding that receipt of employer provided benefits does not

support an inference that the employer regarded the employee as substantially limited in the

performance of a major life activity.

　　　　In this case, the applicable plan documents provide for STD benefits if the employee has

a "non-work related illness or injury that prevents [the employee] from doing the basic duties of

[his or her] job."  (STD Plan, Dkt. 62-11, at 36.)  LTD benefits are payable for 24 months if the

employee is "unable to perform all of the material and essential duties of [his] own occupation."

(LTD Plan, Dkt. 62-12, at 4.)  The eligibility criteria are not concerned with any impairment other

than those that affect the ability to do the basic duties of one's job or occupation.  An inability to

perform the basic requirements of a particular job, or even an occupation, would not necessarily

mean that a person is substantially limited in a major life activity.  While being unable to return

to work for SVC may qualify a person for "disability" benefits, it would not necessarily mean that

the person is substantially limited in any major life activity. Thus, the fact that Plaintiff was determined to be eligible for STD and LTD (a determination not made by SVC) bears no logical relationship to the question of whether SVC regarded Plaintiff as substantially impaired in a major life activity.

Furthermore, SVC has presented evidence that it did not regard Plaintiff as substantially limited in a major life activity. Ms. Kramer testified that, although she was aware that Plaintiff had suffered from anxiety and depression in the past, she was unaware that Plaintiff had a disability in 2006 when he presented Dr. Berger's note. She was aware that Plaintiff had been diagnosed with depression, but other than his 40 hour work week limitation, did not believe him to have any impairment. (Kramer Dep., Dkt. 67-14, at 10, 15, 19.) As Plaintiff has failed to present any competent evidence that SVC regarded him as disabled, Plaintiff's "regarded as" claim is without merit and will be dismissed.

Because Plaintiff has failed to present a genuine dispute of fact material to the question of whether he has a disability as defined by the ADA, see 42 U.S.C. § 12102(2), it is unnecessary to complete the remainder of the McDonnell Douglas analysis. Defendants' motion for summary judgment as it relates to the ADA and PHRA claims will be granted.[8]

E.     Retaliation Claim

---

[8]  Because Plaintiff has failed to present evidence that his mental health issues rise to the level of a "disability" under the ADA, his failure to accommodate and related claims fail as well. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be denied.

Plaintiff's Amended Complaint asserts that Defendants "retaliated against him for requesting the accommodation [of no overtime] by advising that he would be terminated if he did not work overtime." (Am. Complaint, Dkt. 53, at 5.) Defendants argue that Plaintiff's retaliation claim should be dismissed because: 1) Plaintiff did not administratively exhaust the claim; and 2) a factual analysis of the claim reveals that the claim is meritless. (Mt. S.J., Dkt. 63, at 28.) Furthermore, Defendants request an award of attorneys fees based on Plaintiffs' refusal to withdraw the retaliation claim.

"Prior to filing an action for employment discrimination under the ADA, an employee must file a timely charge of discrimination with the EEOC." Toscano v. AT&T Corp. Headquarters, 282 F. App'x 118, 119 (3d Cir. 2008) (citing 42 U.S.C. § 12117(a)); see Hamera v. County of Berks, 248 F. App'x 422, 425 (3d Cir. 2007). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Atkinson v. Lafayette Coll., 460 F.3d 447, 453 (3d Cir. 2006) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). "Thus, the ensuing suit is limited to claims that are within the scope of the original administrative charge." DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 433 (E.D. Pa. 2007). "In other words, 'a

subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge.'" Id. (quoting Kresefky v. Panasonic Communs. & Sys. Co., 169 F.R.D. 54, 61 (D.N.J. 1996)).

Plaintiff acknowledges that he did not check the blank indicating "retaliation" in his PHRC Complaint (which was dually filed with the EEOC). (Opp. Mt. S.J., Dkt. 67, at 23.) Plaintiff maintains, however, that he is still entitled to proceed with his retaliation claim because he was not represented by counsel when he filed his PHRC Complaint, and "his oversight due to his lack of legal knowledge should not be held against him because he still provided notice as to a possible retaliation claim in his PHRC complaint." (Id. at 24.) Plaintiff cites no case law in support of this proposition, nor does he argue how his claim provided notice of a "possible" retaliation claim.

In the PHRC disability questionnaire, question two asks: "If you believe the organization treated you this way because of one or more of the reasons listed below, please check those reasons. If you believe the employer treated you this way for a reason which is not listed, explain what you believe to be the reason." (Dis. Questionnaire, Dkt. 62-7,at 3.) The questionnaire then listed: Sex; Race; Color; Religion; Ancestry; Non-job related disability; National Origin; Age; GED; Retaliation; Use of guide dog or support animal. Id. Plaintiff checked "Non-job related disability" and identified the disability as "depression/anxiety." (Id.) No marks were made next to "retaliation." (Id.) Plaintiff also indicated that neither his

managers nor supervisors had made negative comments to him concerning his disability. (Id. at 5.) In Plaintiff's PHRC Complaint, he alleged that Defendants violated "Section 5(a) of the Pennsylvania Human Relations Act 43 P.S. § 951-963." (Id. at 17.)[9]

Where, as here, an administrative charge of discrimination does not assert a retaliation claim and does not otherwise fall fairly within the scope of the administrative charge,[10] dismissal of the retaliation claim for failure to exhaust administrative remedies has been directed. See, e.g., Atkinson, 460 F.3d at 453; Binder v. PPL Servs. Corp., No 06-CV-2977, 2009 WL 3738569, at *5-6 (E.D. Pa. Nov. 5, 2009). Consequently, Defendants' Motion for Summary Judgment as it relates to the retaliation claims will be granted.[11]

G.      Attorneys' Fees

Defendants seek an award of attorneys fees under 28 U.S.C. § 1927 and the inherent authority of this Court with regard to their Summary Judgment Motion concerning the retaliation claim and their response to Plaintiff's Motion for Partial Summary Judgment. (Dkt. 70, at 6-7.)

---

[9] Section 955(a) (section 5(a)), prohibits disability discrimination, while section 955(d) (section 5(d)), prohibits retaliation. 43 P.S. § 955(a), (d).

[10] It is difficult to conceive how the failure to accommodate an alleged impairment also constitutes an act of retaliation. See Lucas v. WW Grainger, Inc., 257 F3d 1249, 1261 (11th Cir. 2001).

[11] Even were this Court to determine that Plaintiff's retaliation claim was not barred due to failure to exhaust administrative remedies, Plaintiff has provided no competent evidence to support a reasonable jury determination that he was retaliated against based on his diagnosis of depression. Indeed, he testified that he does not believe that he was subject to retaliation. (See Pl. Dep., Dkt. 67-12, at 27.)

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "An award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith." In re Prudential Ins. Co. of Am. Sales Practice Lit., 278 F.3d 175, 181 (3d Cir. 2002). Moreover, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (citation omitted).

Although Plaintiff's claims are without merit, there is no evidence that Plaintiff acted vexatiously or in bad faith in filing the motion for partial summary judgment or in refusing to withdraw the retaliation claim. Accordingly, Defendants are not entitled to attorneys' fees.

III.    CONCLUSION

For the above-stated reasons, Defendants' Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOHN BIALKO, JR.                          :
                    Plaintiff             :
                                          :
        v.                                :         3:CV-08-0364
                                          :         (JUDGE VANASKIE)
QUAKER OATS, et. al.                       :
                    Defendant             :

## ORDER

NOW, THIS 30th DAY OF MARCH, 2010, for the reasons set forth in the foregoing

memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Dkt. 61) is GRANTED.

2. Plaintiff's Motion for Partial Summary Judgment (Dkt. 58) is DENIED.

3. The Clerk of Court is directed to enter judgment in favor of Defendants and mark the

above-captioned matter CLOSED.

                                    s/ Thomas I. Vanaskie
                                    Thomas I. Vanaskie
                                    United States District Judge